IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA         :
                                 :
   v.                            :   Civil Action No. DKC 13-0583
                                     Criminal Case No. DKC 09-405
                                 :
CASEY COLEY                      :
                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is the motion of *pro se* Petitioner, Casey Coley ("Mr. Coley" or "Petitioner"), to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 114). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will deny the motion.

**I. Background**

By an indictment filed on July 22, 2009, Petitioner was charged with knowing, intentional, and unlawful distribution, on various dates, of a mixture or substance containing a detectable amount of 3,4-methylenedioxymethamphetamine ("MDMA"), commonly known as "Ecstasy," Benzylpiperazine ("BZP"), and marijuana. (ECF No. 1). Then, by a superseding indictment filed on January 20, 2010, Petitioner was charged with knowing, intentional, and unlawful distribution of a quantity of: (1) a mixture or

substance containing a detectable amount of 3, 4- MDMA (Counts 1, 2, and 5); (2) a mixture or substance containing a detectable amount of BZP, which is commonly distributed as "Ecstasy" (Counts 3 and 6); (3) MDMA combined with BZP (Count 4); and (4) marijuana (Count 6). The superseding indictment also charged Mr. Coley with possession with intent to distribute marijuana (Count 8). (ECF No. 36).

On April 12, 2010, following a four-day trial, a federal jury convicted Petitioner of distribution of benzylpiperazine ("BZP"), in violation of 21 U.S.C. § 841(a); distribution of marijuana, in violation of 21 U.S.C. § 841(a); and possession with intent to distribute marijuana, also in violation of 21 U.S.C. § 841(a). This court sentenced Petitioner to fifty-one months of imprisonment followed by five years of supervised release. (ECF No. 91). The court also ordered that Petitioner, a citizen of Jamaica, to surrender to a duly authorized immigration official for deportation. (*Id.* at 4). Judgment was entered on September 3, 2010. Petitioner appealed, arguing that: (1) the Government withheld exculpatory evidence in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963); (2) the district court abused its discretion in refusing to give some of his proposed jury instructions on the defense of entrapment; (3) the district court erred in refusing his instruction defining reasonable doubt and that this issue

should be reviewed *de novo*; (4) the district court's admission of recordings of transactions between Coley and a confidential informant violated his Sixth Amendment Rights; (5) the district court erred in denying his motion to dismiss the charges in the indictment related to BZP; and finally (6) the district court erred in including acquitted conduct in calculating the advisory Guidelines range. The United States Court of Appeals for the Fourth Circuit affirmed on all grounds. *See United States of America v. Coley*, 47 F.App'x 501 (4th Cir. 2011). On February 21, 2012, the Supreme Court of the United States denied his petition for a writ of *certiorari*. *See Coley v. United States*, 132 S.Ct. 1609 (2012).

On February 18, 2013, while in federal custody, Petitioner timely filed the instant motion to vacate, set aside, or correct his sentence.[1] Petitioner was released from the Bureau of

---

[1] Although the petition was not received by the clerk's office until February 22, 2013, it is dated February 18, 2013. (ECF No. 114). For the purpose of assessing timeliness of a Section 2255 motion, the court deems it filed on the date it was delivered to prison officials for mailing. *See United States v. Dorsey*, 988 F.Supp. 917, 919-20 (D.Md. 1998). Thus, the court accepts February 18, 2013 as the operative date.

Along with the Section 2255 motion, Petitioner also submitted a cover letter dated February 18, 2013, in which he stated: "petitioner notify this court of the intent to supplement the record pursuant to Rule 15 of [the Federal Rules of Civil Procedure.] To this end, petitioner requests permission to file the supplemental memorandum of law in support." (ECF No. 114-1). Although Petitioner refers to a "memorandum of law in support of this 2255 petition" throughout

3

Prisons ("BOP") on March 20, 2013 and was turned over to the U.S. Immigration and Customs Enforcement for deportation. Petitioner was deported to Jamaica, his native country, on April 25, 2013.[2] On the same date, the Government responded to Petitioner's motion pursuant to the court's order. (ECF No. 116).

## II. Standard of Review

28 U.S.C. § 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution

---

the motion, the court and the Government have not received a supplemental memorandum after Petitioner filed the instant motion, nor does the record reflect that any supplemental materials from Petitioner have been filed.

[2] Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." In *Maleng v. Cook*, the Supreme Court stated in pertinent part that it is "not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus. 490 U.S. 488, 491 (1989). The Court then stated that it "ha[s] never held, however, that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has fully expired *at the time his petition is filed*." *Id.* (emphasis added).

Here, before being deported and prior to filing his petition, Petitioner's sentence had not "fully expired." Specifically, Petitioner was in custody at BOP at the time he filed the Section 2255 petition. Furthermore, Petitioner's deportation did not terminate his five-year supervised release. Although Petitioner is no longer incarcerated and has been deported, Petitioner's challenged sentence remains outstanding. Accordingly, Petitioner is "in custody" for purposes of Section 2255 relief.

or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." While a *pro se* movant is entitled to have his arguments reviewed with appropriate deference, *see Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978), if the Section 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be summarily denied. *See* 28 U.S.C. § 2255(b).

**III. Analysis**

Petitioner makes the following arguments in the Section 2255 motion: (1) the court erred in using phenmetrazine as the closest comparative substance to BZP when determining his total marijuana equivalence for sentencing purposes; (2) the court violated 21 U.S.C. § 841(b)(1)(C) by imposing five years of supervised release; (3) ineffective assistance of counsel at trial and on appeal; and (4) this court committed procedural error at sentencing by failing to apply 18 U.S.C. § 3553(a).[3]

---

[3] Aside from the ineffective assistance of counsel claim, the petition is devoid of allegations that might explain Petitioner's failure to raise the remaining issues on direct appeal. Thus, it may be that at least some of Petitioner's claims are procedurally defaulted. As will be seen, Petitioner's ineffective assistance of counsel claim lacks merit. But because the Government has not raised the procedural default issue, the court declines to do so *sua sponte*.

**A. Use of Phenmetrazine as the Closest Comparative Substance to Calculate Petitioner's Sentence**

Petitioner argues that the court "should have used the marijuana table of equivalency, rather than phenmetrazine. This error resulted in a much higher sentence." (ECF No. 114, at 4). This argument lacks merit.

When Petitioner was sentenced in 2010, BZP was not listed in the drug quantity/equivalency tables in the Sentencing Guidelines, U.S.S.G. § 2D1.1(C). Mr. Coley asserts that "Congress has never criminalized BZP itself," and thus "the court should have used the marijuana table of equivalency" to reach a guideline sentence. (ECF No. 114, at 4). In order to calculate Mr. Coley's base-offense level, however, the court was required to use the "marihuana equivalency of the most closely related controlled substance referenced in [the] guideline." U.S.S.G. § 2D1.1 cmt. n.5. Section 2D1.1 of the Sentencing Guidelines, cmt. n.5 provides, in relevant part:

> In the case of a controlled substance that is not specifically referenced in this guideline, determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in this guideline. In determining the most closely related controlled substance, the court shall, to the extent practicable, consider the following:
>
> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a

>controlled substance referenced in this guideline.
>
>(B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
>
>(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

During Petitioner's sentencing, the Government argued that MDMA was the most closely related substance to BZP. Using MDMA as the most comparable substance equates one gram of BZP with 500 grams of marijuana. (*Id.* at 69). Defense counsel disagreed and introduced a chemistry expert, Dr. Thomas Lectka, at the second session of the sentencing hearing held on September 2, 2010. Dr. Lectka testified in support of Defendant's position that phenmetrazine was in fact the more closely related substance to BZP.[4] A chemistry professor at Johns Hopkins University, he explained the similarities in chemical structure

---

[4] Dr. Lectka's curriculum vitae provides that he obtained a Bachelor of Arts degree in chemistry, a PhD in organic chemistry from Cornell University, and was a National Institute of Health post-doctoral fellow at Harvard University before he came to Johns Hopkins as an assistant professor in 1994. He was promoted to professor in 2002.

7

between BZP and phenmetrazine and ultimately opined that, unlike MDMA and BZP, BZP and phenmetrazine are substantially similar. (ECF No. 102, at 12, 29-30).[5] Citing studies on the subject, Dr. Lectka further opined that both BZP and phenmetrazine are stimulants and have similar effects. Although Dr. Lectka recognized that "the literature was often confusing and quite contradictory . . . the substances in question . . . have, generally speaking, comparable potencies from the point of view of an organic chemist." (*Id.* at 15). As noted during the sentencing hearings, the guidelines inform that drug quantity and type are important considerations in deciding an appropriate sentence. (ECF No. 96, at 18). Accordingly, the court credited Dr. Lectka's testimony and the studies presented and concluded that based on the evidence on the record, "the most closely related controlled substance referenced in the guidelines is phenemtrazine," which yielded a marijuana equivalent of 95.95 kilograms and a level 24 offense, and provided a Guideline range of 51 to 63 months imprisonment. (*Id.* at 62, 77).[6] Notably, after considering the Section 3553(a) factors, discussed *supra*, the court sentenced Petitioner to 51 months, the *lower* end of

---

[5] Dr. Lectka explained that given the chemical structure of the two substances, he did not believe MDMA to be substantially similar to BZP. (ECF No. 102, at 16).

[6] The Government also argued that Defendant should be given a two level enhancement for obstruction of justice, which the court declined to do. (ECF No. 102, at 77, 79).

8

the spectrum. Moreover, effective November 1, 2012, the Guidelines Drug Equivalency Table, Section 2D1.1, cmt. 8(D), were amended to include BZP and a marijuana equivalency of 100 grams per gram of BZP, a *greater* equivalency than what the court ultimately found in Mr. Coley's case.[7]

In sum, Petitioner's conclusory statement that "the court should have used the marijuana table of equivalency" falls far short of showing how the court, after considering the statutory factors and the evidence on the record, erred in determining that phenmetrazine was the most closely related controlled substance to BZP and sentencing him to the lower end of the guidelines given the adjusted offense level.[8]

## B. Five-Year Supervised Release Term

Petitioner next argues that the court erred "in imposing five years supervised release for a 21 U.S.C. 841(b)(1)(C) conviction." Petitioner contends that the statute "requires up

---

[7] "The Commission reviewed scientific literature and received expert testimony and comment relating to BZP and concluded that BZP is a stimulant with pharmacologic properties similar to that of amphetamine . . . the amendment establishes a marijuana equivalency of 1 gram of BZP equals 100 grams of marijuana." *United States v. Beckley*, 515 F.App'x 373, 378 (6th Cir. 2013).

[8] Notably, the court *accepted* Defendant's position at sentencing that phenmetrazine was the controlled substance most related to BZP and rejected the Government's position that MDMA was the more closely related drug, which would have yielded a higher offense level than what Petitioner ultimately received.

9

to three years of supervised release [and] the court was under the misunderstanding that it could impose five years." (ECF No. 114, at 4). As explained during sentencing, when Petitioner's counsel first raised this issue, three years is plainly *not* the maximum term of supervised release allowable under 21 U.S.C. § 841(b)(1)(c). Under 18 U.S.C. § 3583(a), the court may include as part of any sentence for a misdemeanor or felony "a term of supervised release after imprisonment." Section 3583(b) sets the maximum periods of supervised release. Notably, Section 3583(b) provides that e*xcept as otherwise provided*, the authorized terms of supervised release are

> (1) for a Class A or B felony, not more than five years;
>
> (2) for a Class C or Class D felony, not more than three years; and
>
> (3) for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year.

18 U.S.C. § 3583(b). By including the words "except as otherwise provided," this statute creates an exception for those special statutes, such as those involving drug offenses, which carry their own mandatory *minimum* periods of supervised release. *See United States v. Good*, 25 F.3d 218, 220 (4th Cir. 1994). Specifically, Section 841(b)(1)(C), which covers drug offenses, provides that "[a]ny sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior

10

conviction, impose a term of supervised release of *at least* 3 years." 21 U.S.C. § 841(b)(1)(C) (emphasis added). Accordingly, three years is only the minimum supervised release term proscribed by Section 841(b)(1)(C). *See United States v. Pratt*, 239 F.3d 640, 647 (4th Cir. 2001) (rejecting petitioner's argument that three years is the maximum term of supervised release permitted by Section 841(b)(1)(C)); *see also United States v. Kelly*, 15 F.App'x 44, 45 (4th Cir. 2001) ("[Petitioner] has misread § 841(b)(1)(C), which clearly provides for a *minimum* supervised release term of three years, not a maximum." (emphasis in original)).

### C. Ineffective Assistance of Counsel

Petitioner broadly asserts that "the issues raised herein are issues that should have been raised on appeal. But due to counsel's ineffectiveness, they were not." (ECF No. 114, at 4). Claims of ineffective assistance of counsel are governed by the well-settled standard adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim under *Strickland*, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 688. To demonstrate actual prejudice, Petitioner must show that there is a "reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the *Strickland* analysis, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must assess the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *See Strickland*, 466 U.S. at 697.

Here, the Government correctly argues that Petitioner takes only a generalized swipe at defense counsel's purported ineffectiveness, without specifying any actions or inactions that fell outside the range of competence normally demanded of attorneys in criminal cases. (ECF No. 116, at 7). Petitioner's motion, which contains nothing more than a conclusory allegation that his attorney was ineffective at trial and on appeal, alleges no factual basis whatsoever that his attorney's performance "fell below an objective standard of reasonableness . . . under prevailing professional norms" *Strickland*, 466 U.S.

at 687-88. In any event, even if Petitioner could show that his attorney's conduct "fell below an objective standard of reasonableness," that does not end the inquiry. Specifically, Petitioner must still show, pursuant to the second prong of the *Strickland* analysis, that his counsel's "deficient performance prejudiced the defense." *Id.* at 687. Petitioner's motion is equally lacking in this respect. Moreover, given that "[j]udicial scrutiny of counsel's performance must be highly deferential [because i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," *id.* at 689, Petitioner's motion does not even come close to satisfying either prong of the *Strickland* standard.

**D.  Section 3553(a) Factors**

As a last ditch effort to challenge his sentence, Petitioner argues that "the District Court committed procedural error at sentencing by failing to apply 18 U.S.C. 3553(a)." (ECF No. 114, at 5). This argument is similarly unavailing. A district court must explain the sentence it imposes sufficiently, but need not mechanically discuss all the factors listed in Section 3553(a). See *United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006); *see also United States v. Carter*, 564 F.3d 325, 329-30 (4th Cir. 2009) (district court need not robotically tick through every Section 3553(a) factor;

rather, district court must place on record individualized assessment based on particular facts of case at hand).

Petitioner argues that "[a]t no time during the sentencing did the court refer to 3553(a), and its impact," when in fact the court supported with reasons Petitioner's ultimate sentence *based on* the relevant 18 U.S.C. § 3553(a) factors.[9] Indeed, after concluding that phenmetrazine was the closest comparative substance to BZP for sentencing purposes, the court turned to the Section 3553(a) factors, specifically stating that "we now have to consider the 3553(a) factors on all of this." (ECF No. 102, at 78). The court considered arguments made by the Government and defense counsel regarding the specific Section 3553(a) factors, ultimately taking into account the fact that

---

[9] 18 U.S.C. § 3553(a) provides in relevant part:

> Factors to be considered in imposing a sentence . . . The court, in determining the particular sentence to be imposed, shall consider –
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

14

this was Mr. Coley's first conviction, the quantities of the pills and marijuana he distributed and the proceeds from such distributions, and the seriousness of the offense, noting that although the drug at issue was "not heroin . . . not cocaine . . . it is, nevertheless, a drug that is, for good reason, illegal and needs to be addressed." (ECF No. 102, at 95). Based on Petitioner's continued failure to take any responsibility and insistence on placing all blame on the Government both at trial and at sentencing, the court reasoned that "[t]he fact that [Mr. Coley] continues to blame all of this on others and said he lost his way, doesn't give [the court] confidence that he wouldn't resort to this kind of conduct again," especially given that, as his counsel argued, Petitioner's conviction would likely undermine his ability to otherwise earn a living. (*Id.* at 97). Accordingly, contrary to Petitioner's contention, the court fully considered the Section 3553(a) factors in imposing his sentence.

### E.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Upon review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it will decline to issue a certificate of appealability on the issues which have been resolved against Petitioner.

## IV. Conclusion

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
